Johnson, J.,
concurring: I concur in the result reached by the majority because I perceive that, even if defendant had obtained a favorable ruling on the evidentiary matters he challenges in this appeal, the verdict would have been the same. I write separately because I do not agree with all of the majority’s evidentiary holdings, especially where it allows the weight of the evidence to influence its assessment of the admissibility of the evidence.
First, I do not agree with the majority’s characterization of the victim’s question to Joy Trotnic, to-wit: “Do you think Brett would burn the house down with me in it?” The majority opines that the utterance was not a hearsay statement because it sought Trotnic’s opinion. But Trotnic’s precrime opinion as to what the defendant might or might not do in the future was not relevant to the question of what defendant actually did or did not do, i.e., Trotnic’s opinion was not relevant evidence of defendant’s guilt. What makes the utterance relevant in this criminal prosecution is the victim talking *647 about the defendant burning down their house with her in it, which was the precise event that subsequently occurred. In other words, the out-of-court question was proffered for the truth of the matter forming the basis of the query.
Under the majority's rationale, any hearsay statement could be rendered admissible if the witness simply says that the declarant posed the statement as a question. For instance, testifying to the out-of-court statement,”my neighbor smokes marijuana,” would be hearsay. But the majority would apparently find that it would not be hearsay if posed as the out-of-court question, “would you believe that my neighbor smokes marijuana?” Such a technical distinction would undermine the purpose of the hearsay rule and would elevate form over substance. I would find that the opinion request was irrelevant and that the factual predicate of the request was hearsay.
Most importantly, however, I disagree with the majority’s determination that the victim s multiple prior suicide attempts or ideations were not relevant to the defense theory that the victim committed suicide. Statutorily in this State, “relevant evidence” is defined as meaning “evidence having any tendency in reason to prove any material fact.” K.S.A. 60-401(b). We have noted that our statutory definition resembles Federal Rule of Evidence 401: ““‘Relevant evidence” means evidence having any tendency to malee the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Reid, 286 Kan. 494, 504, 186 P.3d 713 (2008). Moreover, our caselaw declares that “‘[r]elevance is established by a material or logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted.] ’ ” State v. Burnett, 300 Kan. 419, 427, 329 P.3d 1169 (2014) (quoting State v. Ultreras, 296 Kan. 828, 857, 295 P.3d 1020 [2013]).
The result intended to be established was that the victim committed suicide, and the asserted facts to establish that result were that the victim had previously attempted or considered suicide and that the victim had suffered from depression. Logic would suggest, and I strongly believe that the science would confirm, that prior suicide attempts, especially when coupled with a diagnosis *648 of depression, are indicia of a suicide risk. Consequently, the fact that the victim had previously attempted or contemplated suicide would make it more probable that the victim died from suicide than if the victim had never attempted or contemplated suicide in the past.
The majority declares that past precedent establishes “that antiquated suicidal behavior [is] not relevant to proving a suicidal state of mind.” The fundamental flaw in that declaration is that the defendant does not have to prove that the victim possessed a suicidal state of mind. The State has to prove that the death was a homicide; the defendant just has to come forward with evidence of a defense that casts a reasonable doubt on the States proof. Moreover, the relevance of the proffered evidence of prior suicidal behavior cannot be assessed in a vacuum, but rather that evidence must be viewed in the context of the other evidence suggesting a risk of suicide. Here, the evidence before the juiy included the victim’s personal journal containing a suicide note and a therapist’s testimony that tire victim began counseling with symptoms of depression. In that context, the fact that the victim had previously attempted and/ or thought about attempting suicide is a relevant piece of information for the jury to possess.
The majority suggests that the defense should not be able to use weak evidence of prior suicide attempts or ideations
“to contest tire abundant evidence presented by the State showing that Vashti’s state of mind had improved dramatically over the course of the last year, that she was looking forward to her future and was making plans about which she was excited, and that she explicitly stated, close to the time of her death, that she would not consider suicide because of her religious convictions and because of her concern for her children.”
In my view, the majority outlines what would be a good closing argument for the State to make as to why the jury should believe that the victim’s death was a homicide and not a suicide. But even in the face of an overwhelming quantity of highly compelling State’s evidence, the court must admit relevant defense evidence, notwithstanding the court’s assessment of the relative weakness of the defense evidence. The jury is to weigh competing evidence. *649 Neither the relative weight of the proffered evidence nor its equivocal nature is part of the formula for determining its admissibility. Cf. Schlatter v. Ibarra, 218 Kan. 67, Syl. ¶ 7, 542 P.2d 710 (1975) (uncertain witness testimony qualified by phrase expressing less than positive degree of assurance does not affect admissibility of evidence, although probative force thereof may be affected). For instance, here, the juiy was entitled to weigh the therapist s testimony that the victim said she would never commit suicide because of her religious convictions and her children against the defendants testimony that the victim had previously attempted suicide.
In short, I would find that the victim’s prior suicide attempts and ideations were relevant to the defense theory that the victim committed suicide and that evidence should have been admitted. Nevertheless, in the face of the other evidence, I am convinced that if the excluded evidence had been given to the jury, it would still have convicted the defendant.
Luckert, J., joins in the foregoing concurring opinion.